IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


WILBUR DERRICK GREEN,
      Petitioner,

vs.                                    Case No.:  3:13cv512/RV/EMT

SCOTT FISHER, WARDEN,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This case is before the court on Petitioner's habeas petition and supporting memorandum, filed pursuant to 28 U.S.C. § 2241 (docs. 1, 2).  Respondent filed a response to the habeas petition (doc. 9).  Petitioner filed replies (docs. 11, 13).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that this case should be dismissed for lack of jurisdiction.

I.      PETITIONER'S ALLEGATIONS

Petitioner is an inmate of the federal Bureau of Prisons ("BOP").  He was convicted in the United States District Court for the Western District of Virginia, Case No. 4:06cr31-JLK, of conspiracy to distribute marijuana and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and conspiracy to transfer false identification documents, in violation of 18 U.S.C. § 1028(a)(2), (b), and (f) (*see* doc. 1).  *See* <u>United States v. Green</u>, No. 4:06cr31-JLK, Judgment (W.D. Va. Aug. 28, 2007).  Petitioner was sentenced to concurrent terms of 121-months imprisonment. *Id.*

Petitioner is housed at the Federal Prison Camp in Pensacola, Florida ("FPC-Pensacola"). He states he has been housed at FPC-Pensacola for the past seventy-one (71) months (doc. 2). Petitioner alleges he has been the subject of discrimination and retaliation by prison officials at FPC-Pensacola from December 4, 2008 to June 20, 2013 (*id.* at 2–5). He alleges on December 4, 2008, he overheard Officer Pope instruct inmates to clean an area prior to an inspection, and state, "I don't want to hear any bullcrap about nothing" (*id.* at 2). Petitioner alleges he reported Pope's "violation" to the SIS Lieutenant, Ms. Nelson (*id.*). Ms. Nelson instructed Petitioner to put his complaint in writing, which he did (*id.*). Ms. Nelson forwarded the complaint to Warden Fisher (*id.*). In January of 2009, Ms. Sweets from the BOP's Regional Office interviewed Petitioner and told him she had information that he was receiving special treatment and "favors" from Captain Bruce Chambers (*id.* at 2–3). After the interview, Captain Chambers went on vacation, and Petitioner's job assignment was changed from the Captain's orderly to "work detail" (*id.*). Petitioner alleges his job assignment was changed back to Captain's orderly upon Captain Chambers' return from vacation (*id.* at 3). Petitioner alleges shortly thereafter, Warden Fisher changed his job assignment to kitchen detail (*id.*). Petitioner alleges this was done in retaliation for his complaining about Officer Pope's conduct (*id.*).

Petitioner alleges he reported these incidents in a letter to the BOP's Office of Inspector General on January 15, 2009 (doc. 2, Ex. A). Petitioner stated in his letter that he feared for his safety, and he requested a transfer to a prison camp in Butler, North Carolina (*id.*).

On February 7, 2009, Petitioner sent a letter to Office of Professional Responsibility of the Department of Justice (doc. 2, Ex. B). Petitioner stated in the letter that he had knowledge of "discrimination issues" regarding inmate health care, civil rights violations, and Warden Fisher's failure to properly supervise staff at FPC-Pensacola (*id.*). Petitioner alleged he was being treated unfairly and punished for reporting "security code violations" (*id.*). Petitioner requested that the Office of Professional Responsibility "take action" on his complaints (*id.*). Petitioner alleges on September 26, 2009, he was interviewed by "Mrs. Janet" from the Office of Professional Responsibility, who told him he would be taken care of (doc. 2 at 4). He alleges on December 30, 2009, the Office of Professional Responsibility formally responded to his letter, stating that his complaint was forwarded to the Office of Inspector General (doc. 2, Ex. C).

Also during that time, on March 9, 2009, Petitioner advised SIS Lieutenant Nelson that he feared for his safety (doc. 2 at 3). Petitioner alleges Ms. Nelson arranged for him to be transferred to the county jail, where he remained for twenty (20) days (*id.*). Petitioner alleges he was interviewed by Ms. Dougherty and Lieutenant Smith, who then returned him to FPC-Pensacola (*id.*).

Petitioner alleges in June of 2010, his work assignment was changed from the kitchen detail to "DZ" at the Pensacola Naval Air Station ("NAS") (doc. 2 at 4). Petitioner informed SIS Lieutenant Nelson that he feared being "set up" by BOP employees while he was away from the institution, working at NAS (*id.*). Lieutenant Nelson advised Petitioner that he was reassigned to NAS because the kitchen administrator did not want him in the kitchen (*id.*).

Petitioner alleges on June 10, 2010, he was informed by the Office of the Inspector General that that office did not open an investigation regarding his complaint concerning Warden Fisher's alleged retaliation, and his complaint was referred to the BOP's Office of Internal Affairs (doc. 11, Ex. D). On June 18, 2010, Petitioner sent a letter to the Office of Internal Affairs requesting the status of his complaint and the procedures he must follow to pursue it (doc. 2, Ex. E).

Petitioner alleges on December 1, 2010, he went to his case manager's office, and she directed him to the SIS Lieutenant regarding a "police sticker" that was placed on Petitioner's locker (doc. 2 at 4–5, Ex. F). Petitioner alleges he went to the SIS office, and Officer Merritt told SIS Lieutenant Garbrick, "Watch him, he might be wearing a wire." (*id.*). Petitioner states Officer Merritt's statement made him uncomfortable and was an attempt to assassinate his character (*id.*). He alleges her statement could disrupt the orderly running of the institution (*id.*).

Petitioner alleges on August 14, 2012, he filed a claim under the Federal Tort Claims Act ("FTCA"), complaining he suffered headaches, sleeplessness, back pain, stomach distress, blurred vision, and mental injury as a result of Warden Fisher's "capricious and retaliatory action" from December 4, 2008 to July 1, 2009 (doc. 11, Ex. G). He sought $4,500,000.00 in damages (*id.*). The BOP's Regional Counsel denied his tort claim as time-barred on September 10, 2012 (doc. 11, Ex. H). Petitioner sought reconsideration of the decision, but his request was denied on December 13, 2012 (doc. 11, Ex. I).

Petitioner alleges on June 20, 2013, he was ironing a uniform in his housing unit, when Officer Walsh became "confrontational," snatched the iron from Petitioner, yelled obscenities, and

knocked over a recycling bin, nearly hitting Petitioner with it (doc. 2, Ex. D). Petitioner alleges he complained of Walsh's conduct to the supervising lieutenant, but the lieutenant told him there was little he could do, and suggested Petitioner report the incident (*id.*).

Petitioner filed the instant § 2241 petition on September 17, 2013 (doc. 1 at 6). He contends the above-described conduct of officials at FPC-Pensacola constitute civil rights violations and discrimination. He seeks a sentence reduction due to the "harsh" conditions of confinement at FPC-Pensacola, pursuant to United States Sentencing Guidelines § 5K2.0 (docs. 1, 2).

II.     RESPONDENT'S RESPONSE

Respondent contends Petitioner failed to exhaust his administrative remedies prior to filing this habeas action (doc. 9 at 1–3). Respondent contends the BOP's administrative remedy process provides inmates the opportunity for formal review of their complaints related to any aspect of their imprisonment (*id.*). Respondent contends Petitioner has not filed any administrative remedies while incarcerated in the BOP, as evidenced by the Declaration of Joksan Morgan (doc. 9, Ex. 1). Respondent further contends Petitioner's letters to the Office of Inspector General, Office of Internal Affairs, and Office of Professional Responsibility are insufficient to satisfy the administrative grievance process. Therefore, the instant petition is subject to dismissal for lack of jurisdiction (*id.*). Additionally, Respondent contends notwithstanding the exhaustion issue, the petition should be denied, because Petitioner's requested remedy—a sentence reduction under U.S.S.G. § 5K2.0—is not available for post-conviction claims challenging conditions of confinement (*id.* at 3–4).

In Petitioner's reply, he contends the exhaustion requirement does not apply to habeas petitions (doc. 13). He additionally contends exhaustion would be futile, because he complained at the institutional, regional, and national levels, including filing a federal tort claim, but officials failed to remedy the alleged constitutional violations (docs. 11, 13).

III.    ANALYSIS

It is well established that prisoners must exhaust administrative remedies before habeas relief may be granted, including relief pursuant to § 2241. *See* Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004). Exhaustion of administrative remedies is jurisdictional. *See* United States v. Williams, 425 F.3d 987, 990 (11th Cir. 2005) (dismissing claim for sentence credit under § 3585(b) for lack of jurisdiction, because prisoner failed to exhaust administrative remedies); United States

v. Lucas, 898 F.2d 1554, 1556 (11th Cir. 1990) (same);[1] United States v. Mitchell, 845 F.2d 951, 952–53 (11th Cir. 1988) (same); *see also, e.g.,* Nichols v. Warden, FCC Coleman-Low, 458 F. App'x 844, 845 (11th Cir. 2012) (unpublished) (exhaustion of administrative remedies is jurisdictional in § 2241 cases brought by federal prisoners) (citing Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992)); Krist v. Eichenlaub, 386 F. App'x 920, 923 (11th Cir. 2010) (unpublished) (same); Rey v. Warden, FCC Coleman-Low, 359 F. App'x 88, 90 (11th Cir. 2009) (unpublished) (same).[2]

The BOP provides a four-level administrative grievance procedure for prisoner complaints. *See* 28 C.F.R. § 542.10–542.15; United States Dep't of Justice, Federal Bureau of Prisons, Program Statement No. P1330.17. Initially, prisoners must seek resolution of issues through informal grievances. *See* 28 C.F.R. § 542.13(a); BOP Program Statement P1330.17, pp. 4–5. If unsuccessful, an inmate may then file a formal written complaint with the warden of his institution on the BP-9 form (doc. 9, Ex. 1, Declaration of Joksan J. Morgan ¶ 3). *See* 28 C.F.R. §§ 542.13(a), 542.14; BOP Program Statement P1330.17, pp. 4–6. An inmate who is not satisfied with the warden's response may appeal to the Regional Director on the BP-10 form (*id.*). *See* 28 C.F.R. § 542.15; BOP Program Statement P1330.17, pp. 6–7. The appeal must be submitted within twenty calendar days of the date the warden signed the response. *See id.* An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel for the BOP on a BP-11 form within thirty

---

[1] In Lucas, the court concluded that the exhaustion requirement in § 2241 cases was jurisdictional after examining 18 U.S.C. § 3585 and its predecessor, 18 U.S.C. § 3568. *See* 898 F.2d at 1554–56. The Eleventh Circuit has reasoned that "[a]lthough judicially developed exhaustion requirements might be waived for discretionary reasons by courts, statutorily created exhaustion requirements bind the parties and the courts." Richardson v. Reno, 162 F.3d 1338, 1374 (11th Cir. 1998) (emphasis added), *judgment vacated on other grounds*, 526 U.S. 1142, 119 S. Ct. 2016, 143 L. Ed. 2d 1029 (1999). Failure to comply with statutory exhaustion requirements deprives a court of jurisdiction; thus "mandatory statutory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply due to futility." *Id.*; *cf.* Gallo Cattle Co. v. United States Dep't of Agric., 159 F.3d 1194, 1197 (9th Cir. 1998) ("[W]hile judicially-created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements deprive the court of jurisdiction and, thus, preclude any exercise of discretion by the court."). *But see* Rodriguez v. Lamar, 60 F.3d 745, 747 (11th Cir. 1995) (declining to address exhaustion in § 2241 context where Government did not raise issue of petitioner's failure to exhaust).

[2] The undersigned cites unpublished opinions of the Eleventh Circuit  only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

calendar days of the date the Regional Director signed the response (Morgan Decl. ¶ 2). *See* 28 C.F.R. § 542.15; BOP Program Statement P1330.17, pp. 6–7.

Here, the Declaration of Joksan Morgan demonstrates Petitioner did not file any administrative remedies regarding the issues raised in the instant § 2241 petition (doc. 9, Morgan Decl. ¶ 5). Petitioner does not dispute this. He argues the exhaustion requirement does not apply to § 2241 petitions. He also argues exhaustion would be futile, because he notified BOP officials of his complaints through correspondence and his FTCA claim, but officials failed to remedy the alleged constitutional violations.

As previously discussed, the Eleventh Circuit has determined that the exhaustion requirement applies to § 2241 petitions and is jurisdictional. Given the Eleventh Circuit precedent that the exhaustion requirement is jurisdictional, whether Petitioner may even assert a futility exception to the requirement is questionable. Assuming Petitioner may argue futility as an exception to the exhaustion requirement, however, such exceptions apply only in "extraordinary circumstances," and Petitioner "bears the burden of demonstrating the futility of administrative review." Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam). Petitioner has not shown that his case involves extraordinary circumstances, and he has not adequately explained why administrative review would prove futile. The fact that a favorable administrative remedy outcome is unlikely does not meet Petitioner's burden of establishing extraordinary circumstances justifying waiver of the exhaustion requirement. *See, e.g.*, Irwin v. Hawk, 40 F.3d 347, 349 (11th Cir. 1994); Green v. Meese, 875 F.2d 639, 641 (7th Cir. 1989) ("No doubt denial is the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Lightning may strike; and even if it doesn't, in denying relief the Bureau may give a statement of its reasons that is helpful to the district court in considering the merits of the claim."); Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 78 (1st Cir. 1997) ("A pessimistic prediction or a hunch that further administrative proceedings will prove unproductive is not enough to sidetrack the exhaustion rule."). Further, Petitioner's correspondence with the Inspector General's Office, Office of Internal Affairs, and Office of Professional Responsibility do not show that full use of the administrative remedies available to him would have been futile. *See* Hicks v. Jordan, 165. F. App'x 797, 799 (11th Cir. 2006) (unpublished) (even if futility exception to exhaustion were available, correspondence with regional inmate systems

administrator, and administrator's response that BOP could not grant the requested relief and that petitioner should seek relief in federal court, did not demonstrate that exhaustion should be excused).

Finally, even if this court had jurisdiction to consider Petitioner's claim, he is not entitled to the relief he seeks. Section 5K2.0 of the United States Sentencing Guidelines permits downward departures from the Guidelines for harsh pre-trial conditions of confinement, but that section cannot be applied retroactively to post-conviction conditions. *See* Wright v. Terrell, No. 10-3492(PGS), 2011 WL 5117851, at *4 (D.N.J. Oct. 26, 2011) (unpublished); Medina–Rivera v. Terrell, No. 11-Civ-0734(BMC), 2011 WL 3163199, at *2 (E.D.N.Y. July 26, 2011) (unpublished). The proper remedy for Petitioner's complaints of retaliation and discrimination is an injunction requiring correction of the conditions, which is properly sought in a civil rights action, not a habeas corpus action. *See* McKinnis v. Mosely, 693 F.2d 1054, 1057 (11th Cir. 1982) (notwithstanding that prisoner sought equitable relief in addition to damages in complaint arising from denial of contact visits and confinement in segregation after he was found guilty of being in an unauthorized area with his wife during visiting hours, the case should have been reviewed on basis of its sufficiency as civil action for deprivation of rights rather than as habeas corpus action where, even if he were to prevail on all of his claims and receive all the benefits he demanded, duration of his sentence would not be shortened by one moment); Boyce v. Ashcroft, 251 F.3d 911 (10th Cir. 2001) (section 2241 may be used to challenge underlying authority of entity to hold prisoner in custody, but may not be used to challenge prisoner's placement in particular facility or attack conditions that result from such placement). Civil rights actions filed by prisoners are also subject to the requirement that the prisoner exhaust administrative remedies prior to filing suit. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under . . . any . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies to all inmate suits regarding about prison life. *See* Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). As previously discussed, Petitioner has not satisfied the exhaustion requirement in this case.

IV.     CONCLUSION

Petitioner failed to exhaust his available administrative remedies prior to filing the instant habeas action. Therefore, this case should be dismissed without prejudice for lack of jurisdiction.

Accordingly it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (doc. 1) be **DISMISSED without prejudice** for lack of jurisdiction based upon Petitioner's failure to exhaust his administrative remedies prior to filing suit.

At Pensacola, Florida this 12th day of February 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**